May it please the Court, Catherine Tassinari representing Appellant Plaintiff Levi Schultz. It's interesting, I don't think I've ever argued this before. This particular argument, which is, I'm asking the Court to remand the case for a psychological evaluation. The ALJ gave two main reasons as to why it was not necessary to have a psychological evaluation. The main argument is that the state psychologist had reviewed the record and had assessed some mental limitations and that's that, there was enough. The problem with that is, well, I have the usual argument that the state psychologist never examined Mr. Schultz. So right off the bat, they're entitled to a lot less weight. But the bigger problem is that they reviewed the record in 2003, and this was prior to the delusional episode. It was prior to Dr. Misick's treatment of Mr. Schultz for depression. And it does not appear that the state psychologist saw the record of the therapist, Graham, who had diagnosed depression. So I went through all of the forms that they fill out and the only thing they seem to be looking at was a very old school psychologist record in 2000 or 2001 when the claimant was 16 years old and that had a finding of a learning disorder or possible learning disorder. Why should we credit Dr. Misick's opinion that he could only work, that he would miss two days of work a month when he didn't cite any medical findings or any other evidence to support that? Well, I don't think that the doctor has to cite it in the, I mean, there's the whole check-a-box argument that she was just filling out a form, but I think you really look at her records. Unfortunately, I do agree with you that her records are not very detailed, but she did consistently treat Mr. Schultz for depression, which goes to my first argument about needing a psychological evaluation. On the issue of how much he could work, she has this consistent treatment of him for the back condition and she has seen his EMG findings of possible radiculopathy. So I think she's entitled to some weight on this, but I think the stronger argument is I think the claimant has something of a problem in that we have, until this episode came up, the record is very clear. He complains of back problems. He needs surgery. He again has problems. It's not resolved. He again has surgery. There's no, if you look at the neurosurgeon's report, there's no questioning about the claimant's credibility at all. In fact, until this whole thing came up where he was claiming to have bone cancer, it's really coming out of the blue. So at any rate, I think he clearly does have some very significant back problems, but I think Dr. Misik is entitled to weight, but I think it's complicated by the psychological issue. What time period is the request for benefits covering? This is an SSI case, and so even though his back problems and psychological problems began much earlier, he's entitled to benefits only from his date of application. And so I think he's entitled to benefits only from his date of application, which I believe is 2003. So when you say that the review was of an earlier period, the review was from before that. The review that the ALJ relied upon was from 2001. Is that what you said? No, no. The state psychologists last reviewed the evidence in the, I think, December of 2003, looked at earlier documents. They went all the way back to when he was 16 and looked at his school psychologist. You said it was before the incident? But when they examined the record, the record they were reviewing did not include any treatment for depression, and it didn't include this funny incident about the delusion. You began by saying that there were two reasons that the ALJ gave. That was one. What was the other one? The other reason that the ALJ gave was he said that a one-shot psychological evaluation would not be useful because of the claimant's tendency to exaggerate. Plaintiff's position is that the question here is where did this exaggeration come from? Was it a conversion disorder that had been suggested years ago by Dr. Davin, the neurologist? Was it a delusional episode? The ALJ calls it a possible delusional episode, says it's a possible conversion disorder. But the whole issue is the tendency to exaggerate, and denying a psychological evaluation because he maybe has a tendency to exaggerate seems to miss the point. It seems that it's sort of hard to see. I understand why the depression could affect his ability to work. Why would this affect his ability to work? Well, if a person thinks that they have something wrong with them that they don't actually have wrong, they can be limited. When it came up with Dr. Davin evaluating him, the claimant was claiming to have lost feeling in his whole right side. That's why it sounds like a conversion disorder more than just a delusion. The record suggests that at least on some occasions he has imagined conditions that do not appear to exist. And I'll reserve the rest of my time. Thank you very much. Good morning, Your Honors. May it please the Court, Matthew Pyle representing the Commissioner of Social Security. With respect to the psychological consultative examination issue, the basis for Mr. Schultz's arguments appears to be based on a couple of very isolated instances, and some of which appear before the relevant time period in this case, and one of which appears after. The possible conversion disorder that Ms. Tassinari just mentioned happened over a year before he alleged he even became disabled. So I don't believe that that alone would warrant a consultative examination in this case. The fixed delusional state, which was the one single episode that occurred after the date of onset. It wasn't a single episode. It went on for a while, as I understand it. It did go on for a while, a couple months, I think. But it was a fixed delusional episode, and he did persist in that for a period of time, and I believe that was a couple-month period. I mean, just thinking about it, it couldn't have been that he expected to fool anybody. It couldn't have been a rational fabrication, because it was obviously going to be discovered that there was no Dr. O'Neill and that he didn't, in fact, have bone cancer. That's true, Your Honor, but it was limited to a very discrete period of time. There's no evidence of any functional or vocationally relevant limitations that came from that. But why shouldn't that be a reason to require a psychological examination? Because the entire purpose of the ALJ's analysis is to determine whether there are vocationally relevant limitations, and if there were none and there's no evidence of any from that one episode and there's no evidence of other episodes that have occurred, then there... What do you mean, no evidence? There's no evidence that any other delusional states ever occurred. This was a one-time, albeit one- or two-month period of time where it was occurring. It was a one-time isolated episode, and there's no evidence that it... It could certainly be linked to this history of possible conversion, if I understand what conversion is. My understanding is that conversion is essentially taking mental health issues and giving them a bodily form. And so it's very similar to thinking something's hurting you when it really isn't. True, and I agree with that, and that is also my understanding of what a conversion disorder is. But again, that was an episode that was also only mentioned once. It's mentioned a few times in the record, but it was only one episode of a possible conversion disorder. I believe that occurred in December 2001. And then there is a record of depression. There are mentions of depression with Dr. Mychick. I'm not exactly sure how to pronounce her name. I think the testimony is Mychick. But again, the most that those records show is, I think, a flat effect from time to time. There's no mental status. He was treated with medication. He was treated with medication, and I believe with good effect. And this is only about whether this should be developed, and my understanding is that this is a man with no financial resources, so he wasn't really in a position to do it himself and didn't. He was never treated psychiatrically except by a general doctor. That is true, Your Honor, but there still has to be ambiguity in the record or an inadequate record in which to order the consultative examination. Somebody is really believing, and there doesn't seem to be any. He believed it enough to convince a psychologist that it actually happened, that he had bone cancer and going around running his life as if he did when he didn't. That is certainly something that would give you pause about his ability to function in the world. It would give you pause if it were, in my opinion, a reoccurring problem. Because it was one episode and there's evidence in the record. But that's why I went back to the earlier period. It appears that it may have been a recurring problem. The earlier period was never a delusional state. That was delusion, which is the only time a delusional episode ever occurred was in the July 2005 fixed delusional state regarding the cancer diagnosis. The earlier episode was a conversion disorder, which is a separate thing and was not based on a delusion. The fixed delusional state, which occurred later in July 2005, was attributed in one of the records to a stressful situation at home. I believe his mother was going through some difficulties that made it stressful for him. And that was one of the hypotheses as to what created the fixed delusional state. But because there were no recurring episodes of this, there's no indication in the record that this happened more than the one. What cases would you suggest that we consult as to this narrow question of the reach of the ALJ's affirmative obligation, which we know exists as a Supreme Court case, which emphasizes that it exists? And why wouldn't the – what case law would support the notion that this is not an instance in which that obligation? I think there's two cases. You mentioned Sims. And I think the relevant portion of Sims is that it is – that the ALJ's role in the hearing that the claimant goes through is inquisitorial in nature. But I would suggest that it doesn't mean that the ALJ has to inquire into every isolated mystery that occurs in a claimant's medical past. And I think that's what we have here, is that it does require inquiring when there is evidence that would indicate vocationally relevant limitations. But we don't have that here where it was simply one episode. And the other case that I would look to for the legal standards would be the Reed case, which I understand that Judge Brezon authored. We would suggest that the legal standards in that case apply here, which is that there is no affirmative right to a consultative examination by a particular specialist, but also that there is wide latitude that is to be given to the administrative law judge in determining whether a consultative examination should be ordered. Now, the result in Reed was different. In that case, a consultative examination was found to be necessary, but the facts were substantially different than those here. In that case, there was an admission by the administrative law judge on the record that he thought a consultative examination would be helpful, but he was unwilling to refer the claimant in that case for a consultative examination because he didn't trust the two doctors that were available to do the examination. We don't have that here. We have an instance where the judge made a determination. We do have one of his doctors saying, though, that he should have such an examination. True. And it was on a checkbox form. That is not a medical opinion under the regulations. It is not something the ALJ can ignore, and the ALJ did not ignore it. He directly addressed it. But it is not a ---- Who gives out these checkboxes? Are these the doctor's checkbox forms or the Social Security Administration's checkboxes? It's neither, Your Honor. In this case, it was prepared by Mr. Schultz's attorney and submitted to the doctor to ---- Well, I meant by that the doctor. So it's not an official form. It's not an official form. It was a form that was prepared by Mr. Schultz's attorney and submitted to Dr. Michek for her to complete. And because that is not a medical opinion, it doesn't mean the ALJ can ignore it, but it doesn't mean that he has to give it any special weight or significance. In your view, what is this Court's conclusion? I don't think there's a wide difference in what the record shows. I think everybody knows what the record shows. What do you think we should do properly when we have this kind of record before us? Well, I think in this instance, deference to the administrative law judge's determination that no consultative examination was necessary under the facts before him and the evidence before him. But the reason he gave is a rather odd one. It's essentially that because this person may be delusional, I mean, his reason, the reason he gave seems inconsistent with your notion that this is a one-shot deal. He seems to be saying precisely because this fellow's psychology is such that he is likely to make up stories, therefore we shouldn't have a psychological exam to see if he's likely to make up stories. Is that the point? I didn't read it exactly that way, Your Honor. I agree that that is one interpretation of what the administrative law judge wrote. But I read it more as the record as a whole indicates that he has isolated episodes where he has these problems, but they aren't problems that he experiences on a normal basis, and therefore sending him to a consultative examination may very well not even reach the issues that are potentially implicated by these single episodes that occur in his medical past. What page is this statement on here? I apologize, Your Honor. I didn't hear that. What page is this statement on in the ALJ opinion as to why he didn't do this? It's on page 25, Your Honor. And it's right in the middle of the page. He says, further, the fact that he has exaggerated his problems to the point of fabrication suggests that a one-shot evaluation would not help. So that's not what you said. It's something else. Well, I think it is because there is only one episode in the medical record where he exaggerated to the point of fabrication. That was the one episode of fixed delusional state. If the point is to examine why he had that problem and he's not experiencing it any other time, then sending him to a consultative examination may very well not even reach the issues that are potentially implicated by these single episodes   I didn't hear that. You have a creative and perhaps justified reason, but it's not the one he wrote down. I understand your point, Your Honor, but I think what Reed requires is that the reasons that an ALJ must give have to be tied to the evidence of the record and not to some external reasons. And the ALJ did do that here and I believe complied with Reed by giving reasons that were tied to the evidence of record. Does the Court have any further questions? No, thank you. Thank you, Your Honors. The reason I – when I said earlier that I'd never made this argument before, it's usually these are sent out for psychological evaluations when there's – these cases take so long. The person files their application and it just takes a long time. There's a lot of people seeking benefits and there's a period of time off. And so sometimes by the time you get to a hearing, which usually takes over a year after you've requested it, you need to get more – we need more – to get more current because a lot of time has passed since the agency has collected its information and usually you would have a psychological evaluation. The reason you really need one in this case is that the only – we have the only treatment from a therapist, the only treatment where there was a formal diagnosis within a GAF assessment is the therapist, who's not an acceptable medical source. And we do have the treating doctor who gave him medication, but really not much discussion in her record. So we know she was treating him, we know we have a diagnosis, but we really just don't have any development on this issue. So I ask that you remand the case for that development. Thank you very much. Thank you to both counsel for a useful argument. The case of Shultz v. Astru is submitted and we will go to the next case of the day, which is Paulson v. Astru.
judges: Farris, Nelson D. W., Berzon